UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LYUDMYLA PYANKOVSKA,<br><br>Plaintiff(s),<br><br>v.<br><br>SEAN ABID, et al.,<br><br>Defendant(s). | Case No. 2:16-CV-2942 JCM (BNW)<br><br>ORDER |

Presently before the court is the matter of *Pyankovska et al v. Abid et al*, case no. 2:16-cv-02942-JCM-BNW, for the determination of damages.

## I. Background

On December 5, 2019, this court granted plaintiff's motion to strike defendant's answer and for entry of default judgment. (ECF No. 123). In that order, the court instructed Lyudmyla Pyankovska ("plaintiff") to file an accounting of her damages, with competent evidence proving the amount of those damages. *Id.*

Plaintiff filed her declaration and evidence on December 25, 2019, (ECF No. 124) along with declarations of Ricky Marquez (ECF No. 125), Iryna Nezhurbida (ECF No. 126), and Svetlana Mundson (ECF No. 127). After a brief extension (ECF Nos 133; 134), plaintiff filed Dr. Nicolas Ponzo's declaration (ECF No. 135).

The court instructed Sean Abid ("defendant") to file his response within 14 days of plaintiff's accounting. (ECF No. 123). Defendant moved to extend time, which the court granted. (ECF Nos. 136; 137). Now before the court is defendant's second motion to extend time (ECF No. 138) and his response to plaintiff's accounting (ECF No. 139).

## II. Legal Standard

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Indeed, Fed. R. Civ. P. 8(b)(6) provides that "[a]n allegation—**other than one relating to the amount of damages**—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8 (emphasis added).

Thus, damages must be proven. This requirement is born out by Rule 55, governing default judgment, which provides as follows:

> In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> **(B) determine the amount of damages;**
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed. R. Ci. P. 55(b)(2) (emphasis added).

## III. Discussion

As an initial matter, the court grants defendant's second motion to extend time. (ECF No. 138). On January 24, defendant requested an additional 3 days to file his response because his counsel was ill and bedridden for several days. *Id.* Defendant filed his response three days later, on January 27. (ECF No. 139). Good cause appearing, the court grants defendant's motion and now considers plaintiff's accounting and defendant's response.

Defendant argues that the *Rooker-Feldman* doctrine bars this court from awarding plaintiff several of her requested categories of damages: Radford Smith's attorney fees, Dr. Holland's expert fees, and child support payments. "The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging

- 2 -

'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005)). Put plainly, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* at 463.

"*Rooker-Feldman* may also apply where the parties do not directly contest the merits of a state court decision, as the doctrine 'prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a *de facto* appeal from a state court judgment.'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citing *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003))).

> A federal action constitutes such a de facto appeal where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." In such circumstances, "the district court is in essence being called upon to review the state court decision."

*Id.* (internal citations omitted).

But, because the Supreme Court has repeatedly and purposefully narrowed the purview of *Rooker-Feldman*, defendant hangs his hat on a dying doctrine. *See Skinner v. Switzer,* 562 U.S. 521, 531–33 (2011) (reaffirming the limited scope of the *Rooker-Feldman* doctrine); *Lance,* 546 U.S. 459, (2006); *Exxon Mobil Corp.*, 544 U.S. 280; *see also* Samuel Bray, *Rooker Feldman (1923–2006)*, 9 Green Bag 2d 317.

Indeed, the Ninth Circuit has held that "[a] suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman* when 'a federal plaintiff **asserts as a legal wrong an allegedly erroneous decision by a state court**, **and seeks relief from a state court judgment based on that decision**.'" *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (quoting *Noel v. Hall*, 341 F.3d 1148, 1162–64 (9th Cir. 2003)) (emphasis added); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (9th Cir. 1994) (noting that *Rooker-Feldman* does not apply to claims that have not yet been litigated). "In contrast, if a federal plaintiff asserts as a legal wrong an allegedly illegal *act or omission by an adverse party, Rooker-Feldman* does not bar

- 3 -

jurisdiction." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1036 (9th Cir. 2013) (quoting *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013)) (internal quotation marks omitted) (emphasis in original).

Here, plaintiff is prosecuting a case predicated entirely on defendant's illegal act: placing a recording device in his minor son's backpack with the intent to surreptitiously record plaintiff. (ECF No. 81). Although some of plaintiff's damages stem from the state court's decision, plaintiff does not challenge that decision—or the corresponding judgment—as erroneous. Accordingly, the court finds that it has jurisdiction to award damages incurred as a result of the underlying state court action.

Although the court has jurisdiction to award such damages, it does not necessarily follow that it ought to. The court now considers whether plaintiff is entitled to recover her requested damages under the Wiretap Act.

The Wiretap Act authorizes the court to assess as damages the greater of either "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation;" or "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). Thus, the court must compute the actual damages that plaintiff suffered as a result of defendant's actions.

Plaintiff requests five categories of damages in her accounting: medical expenses, prescription costs, state court legal fees, child support, and costs of the instant suit. (ECF No. 124 at 10–12). First, plaintiff seeks to recover $3,125 in medical expenses incurred when attending therapy sessions with Dr. Ponzo. *Id.* at 10. Plaintiff also seeks to recover $30 spent for prescription medication. *Id.* at 11. Next, she argues that she should be awarded $87,493 in legal costs she expended in the underlying state court custody action. *Id.* She further believes that she should recover $42,683 for past child support payments and $62,916 for future child support payments that plaintiff has and will pay to defendant as a result of the state court's order. *Id.* Finally, plaintiff requests $1,434 in legal costs associated with prosecuting the instant action.

First, the court declines to award plaintiff state court legal fees—including attorney fees and Dr. Holland's expert fees—or the child support payments. While defendant's surreptitious

James C. Mahan
U.S. District Judge

- 4 -

recording may have been an actual cause of the outcome in the state court proceeding, it was not a proximate cause. To the contrary, the state court entered its findings of fact on March 1, 2016. (*See* ECF No. 139 at 3–5). The state court did not address the issue of whether the recording was illegal. Nor did the findings of fact even mention the recording. The findings of fact were predicated almost entirely with the testimony and report of Dr. Holland, which was predicated on her interviews with the parties' son. *Id.*

Although the surreptitious recording may have spurred the interviews, the recordings did not demonstrate that the parties' son "exhibited a preoccupation with the video game Call of Duty throughout the interviews" or that "Call of Duty, with or without any additional controls, is inappropriate for a five or six year old." *Id.* at 4–5. Further, Dr. Holland testified as an expert and explained "that children should be able to speak freely to their parents about the other parent. This type of speech restriction causes confusion and distress in children. It also creates a loyalty bind for children, especially younger children." *Id.* at 4. The court concluded that "[a]s a direct result of [plaintiff's] direct and overt actions, the child is experiencing: confusion; distress; a divided loyalty between his parents; and a decreased desire to spend time with [defendant]." *Id.*

This testimony and the court's findings of fact supported the state court award of custody, attorney fees, and expert fees. Accordingly, the court finds that the state court award of custody, attorney fees, and expert fees were not incurred "as a result of the violation" of the Wiretap Act.

The court turns to the fees plaintiff incurred prosecuting this case, the money spent on therapy as a result of the violation of her privacy, and the prescription medications. Even taking the averments in plaintiff's accounting at face value, this amount totals $4,589: $1,434 in fees and costs prosecuting this action; $3,125 in therapy costs with Dr. Ponzo; and $30 in prescription medication. (ECF No. 124). The statute in this case instructs the court to award the greater of plaintiff's actual damages incurred as a result of the violation or $10,000. *See* 18 U.S.C. § 2520(c)(2).

Defendant perfunctorily argues that this court has discretion to award no fees under 18 U.S.C. § 2520(c)(2). (ECF No. 16 at 11–12). To support this argument, defendant cites to a single case from the Eastern District of Michigan, which noted as follows:

James C. Mahan
U.S. District Judge

- 5 -

> Factors that may be considered include whether the plaintiff suffered financial harm, the extent to which a violation occurred and unlawfully intercepted signals were disclosed, whether the defendant had a legitimate reason for his or her actions, whether the defendant profited from his or her acts, and whether an award of damages would serve a legitimate purpose.

*Directv, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790 (E.D. Mich. 2004).

The court finds that these factors favor an award of $10,000 in statutory damages. First, plaintiff suffered financial harm bringing and prosecuting this lawsuit and seeking therapy. Further, although not specifically articulated by the Eastern District of Michigan, plaintiff suffered mental and emotional harm from defendant's flagrant violation of her privacy. That harm also deserved recompense. Next, defendant deliberately violated the Wiretap Act for personal gain, although defendant cloaks his actions as an attempt "to gather evidence of parental alienation and pathogenic parenting[.]" (ECF No. 16 at 11). As a result of his surreptitious recording just before a custody hearing, defendant now has primary custody of the parties' son and receives child support payments from plaintiff.

Most egregiously, defendant makes the bold claim that "the disclosure of those recordings was limited to the proceedings below, which are sealed." *Id.* at 11–12. However, the court previously noted that defendant posted the transcripts of his recording on the "NEVADA COURT WATCHERS" Facebook page in May 2019. (ECF No. 114-1).[1] Defendant then contends that "[a]ny other alleged dissemination was made in furtherance of the exercise of legitimate first amendment rights to speech, if any were made at all." (ECF No. 16 at 12). In the same breath as he defends his First Amendment rights, defendant summarily dismisses the importance of plaintiff's right to privacy. Thus, the court finds that a $10,000 award for plaintiff serves the legitimate purpose of dissuading defendant from violating plaintiff's right to privacy in the future.

Because plaintiff's actual damages of $4,589 are less than the statutory damages authorized by 18 U.S.C. § 2520(c)(1), the court awards plaintiff statutory damages in the amount of $10,000 to compensate her for defendant's violation of the Wiretap Act.

---

[1] Defendant also posted a copy of plaintiff's motion for protective order on the Facebook page. (ECF No. 114-1).

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to extend time (ECF No. 138) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff is awarded $10,000 in statutory damages.

The clerk is instructed to enter default judgment in favor of plaintiff and close the case accordingly.

DATED February 5, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**